```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


Angela Parker o.b.o. C.A.P.,    :

        Plaintiff,              :

     v.                         :     Case No. 2:16-cv-06

                                :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,      Magistrate Judge Kemp

        Defendant.              :
```

                      REPORT AND RECOMMENDATION

                        I.  Introduction

   Plaintiff, Angela Parker, acting on behalf of C.A.P., a minor, filed this action seeking review of a decision of the Commissioner of Social Security denying the minor's application for supplemental security income.  That application was filed on April 19, 2012, and alleged that the child became disabled on October 19, 2007.

   After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on April 3, 2014.  In a decision dated May 13, 2014, the ALJ denied benefits.  That became the Commissioner's final decision on November 2, 2015, when the Appeals Council denied review.

   After Plaintiff filed this case, the Commissioner filed the administrative record on March 17, 2016.  Plaintiff filed a statement of specific errors on June 13, 2016, to which the Commissioner responded on September 20, 2016.  Plaintiff has not filed a reply brief, and the case is now ready to decide.

        II.  The Lay Testimony at the Administrative Hearing

   Two witnesses testified at the administrative hearing: the minor child and Angela Parker, his mother.  Their testimony is found at pages 274-300 of the administrative record.

The minor child testified first.  He was six years old at the time of the hearing and in kindergarten.  He said that he had friends at school and on the bus, but there were things which happened at school which upset him and that he cried frequently.  He was able to pick the clothes he wore to school but could not tie his shoes.  He said that he paid attention to his mother most of the time.  He wore a vest twice a day and was not sure whether he liked it.

His mother was the next witness.  She said her son was in full-day kindergarten in regular classes.  He had ADHD but was not on medication, and sang in class when he got bored.  He was completing his schoolwork satisfactorily, however.

Plaintiff described her son as very sensitive and said that he cried a lot in class.  He had similar issues at home.  His speech was hard to understand and he had undergone a speech evaluation.  At home, he might have to be told two or three times to do something before he complied.  Plaintiff helped her son with his homework and believed that he understood what he was learning.  He had several friends at school but was having problems with one child on the bus.

Socially, the child was able to go places in public and interact well with adults.  He was physically active and was just starting tee-ball.  Plaintiff said her son could dress himself except for tying his shoes and that he resisted brushing his teeth.  He was able to take a bath on his own and to fix himself snacks like microwave popcorn.

Plaintiff said that when the child was born, his lung collapsed, and he has been diagnosed with lung and heart problems.  He would often get bronchitis or pneumonia and suffered from asthma as well.  That condition was controlled by medication.  He wore a chest therapy vest which loosened the phlegm in his lungs.  His weight and height were normal.

Finally, Plaintiff testified that the child had recently changed schools.  She believed that the prior teacher was not helping him to catch up to his classmates.  He was currently on track to graduate from kindergarten.

### III.  The Educational and Medical Records

Plaintiff's statement of errors does not take issue with the ALJ's findings on three issues: the area of moving about and manipulating objects; the ability to care for himself; and the child's health and physical well-being.  The Court will summarize only those records which deal with the other three areas, which include acquiring and using information, attending and completing tasks, and interacting and relating to others.  The pertinent records are found beginning at page 442 of the administrative record.  The Court begins with the records which Plaintiff asserts are the most supportive of her argument.

First, Plaintiff highlights the teacher questionnaire completed by Jessica Bolin, the child's kindergarten teacher, on March 10, 2014.  She made the following observations on the form. The child read and did math at grade level but his written language skills were "somewhat below grade level."  He had an "obvious problem" in that area but either slight or no problems in nine other areas, including learning new material and comprehending oral instructions and written material.  He also had an obvious problem focusing long enough to finish assigned activities or tasks and also working without distracting himself or others, and those problems occurred on a weekly basis.  Ms. Bolin commented that he "sometimes loses focus" and also that he "hums a lot, which distracts other children."  Of thirteen areas relating to interacting with others, he had only one obvious problem, and that was taking turns in a conversation.  At the conclusion of the form, Ms. Bolin said that the child "has shown lots of improvement in both reading and math" but that he

sometimes had difficulty sitting still and that he could become emotional and cry at times.  (Tr. 442-49).

Apart from the testimony at the administrative hearing, the only other portions of the record which are mentioned under the first statement of error are a speech and language evaluation report from Ohio University, which can be found at Tr. 939-46, and one medical record relating to treatment for ADHD.  The Ohio University report indicated that the child scored below the tenth percentile on five subtests involving concepts and following directions, word structure, recalling sentences, formulating sentences, and understanding spoken paragraphs.  His percentile rank on the fourth of these was only 0.1.  Functionally, it appeared that he would have difficulty following directions, making word choices, retaining information, generating semantically and syntactically correct sentences, and listening to spoken paragraphs of increasing length and complexity.  The evaluator concluded that the child had an expressive and receptive language disorder and did not have the prerequisite skills for learning how to read.  Speech and language therapy were recommended.

The medical record to which Plaintiff refers is found at Tr. 880-86.  They include a report from Dr. Noceti-Dunphy dated September 16, 2013, which noted that the child's current ADHD medication was not helping him, and a follow-up note from October 4, 2013, showing that a different medication did not help, either, and that the child's school performance was getting worse.  At the second visit, all medication was discontinued so that the school could establish a baseline of behavior without medication.

The Commissioner's memorandum is also focused primarily on Ms. Bolin's teacher evaluation and the Ohio University report.  The Commissioner does mention the state agency reviewer's

conclusion that the child did not have two marked or one extreme impairment in the six key areas of functioning but, as Plaintiff points out, that review (Tr. 320-21) was done prior to either of the two most significant evaluations. The ALJ did not rely on any other portions of the record, so the Court will not summarize them, and will discuss the significance of the teacher evaluation and the Ohio University report in its analysis of Plaintiff's first statement of error.

      IV.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 248-64 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that the child was a preschooler on the date of his application and a school-age child on the date of the hearing. Second, he found that the child had not engaged in substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that the child had severe impairments including speech and language delays, bronchiectasis, Kartagener's syndrome, asthma, and attention deficit hyperactivity disorder.

A child can obtain benefits only by meeting or equaling the criteria set out for various conditions in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ found that the child's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments, or functionally equal those requirements. In reviewing the six domains of functioning that are pertinent to a child's benefits application, the ALJ reached these conclusions:

    1.  The child had a "less than marked" limitation in acquiring and using information;

    2.  The child had a "less than marked" limitation in

attending and completing tasks;

    3.   The child had a "less than marked" limitation in interacting and relating with others;

    4.   The child had no limitation in moving about and manipulating objects;

    5.   The child had a "less than marked" limitation in the ability to care for himself; and

    6.   The child had a "marked" limitation in health and physical well-being.

Because a finding of one "extreme" limitation or two "marked" limitations is needed in order to support an award of benefits, the ALJ denied the Plaintiff's claim.

              V.   <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises the following issues: (1) the ALJ erred in finding that the child's limitations in the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others were "less than marked"; and (2) the ALJ erred in his credibility finding.  These issues are evaluated under the following legal standard.

    <u>Standard of Review</u>.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th

Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A.  The ALJ's Findings

It is helpful to begin with a short summary of how a child's application for benefits is evaluated.  The regulations concerning a child's application for disability benefits set out a somewhat different framework than the one which governs applications by adults. As the Court of Appeals has summarized that procedure,

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. §416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in §416.926a. That regulation divides function up into six "domains":
>
> (1) Acquiring and using information;
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for yourself; and
> (6) Health and physical well-being.

-7-

> §416.926a(b) (1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. §416.926a(d). Lengthy definitions for marked and extreme are set out in §416.926a(e). Each includes instructions on how to use test results: "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> §416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.
>
> §416. 926a (e)(3)(i).

Kelly v. Comm'r of Social Security, 314 Fed. Appx. 827, 832 (6th Cir. Feb. 2, 2009).

As noted, Plaintiff takes no issue with the ALJ's findings as to limitations in domains (4), (5), and (6).  However, she argues that the ALJ ignored or misinterpreted the evidence as to the first three domains and that he simply emphasized those portions of the record which supported his conclusions and disregarded the contrary evidence.  The Commissioner contends that the record supports the ALJ's determination on each issue.

The ALJ discussed each domain separately.  On the issue of acquiring and using information, he noted that the Ohio University evaluation pointed out delays in expressive and receptive language skills and that the child had not yet acquired the prerequisites for learning to read.  He also acknowledged Ms. Bolin's comment that the child had an obvious problem with

written expression.  However, he relied on Plaintiff's testimony that the child was doing well in kindergarten, could participate in class, follow directions, and understand and complete his homework, and Ms. Bolin's observations that he had only slight problems in reading and math comprehension, learning new material, recalling and applying previously learned material, and using his problem solving skills during class discussions, as evidence that the limitations in this area were no more than moderate.  (Tr. 257).  There is no indication in this discussion that the ALJ ignored other findings which suggested a more severe limitation, and he accurately recounted the evidence upon which he relied.

    Where evidence in the record is susceptible of different reasonable interpretations, it is not the Court's job, when performing a "substantial evidence" review, to substitute its judgment for that of the ALJ.  An ALJ has a "zone of choice" when interpreting the record, and so long as the ALJ makes a choice which finds reasonable support in that record, that choice is insulated from judicial reversal. See generally Ritterbeck v. Comm'r of Social Security, 2012 WL 6594828 (S.D. Ohio Dec. 18, 2012), adopted and affirmed 2013 WL 796069 (S.D. Ohio March 4, 2013).  That is what happened here.  The fact that the child's teacher, who had the opportunity to observe him in class each day for the better part of a year, said that he had only a single obvious problem in the area of acquiring and using information, and believed his other skills in this area to be adequate, is evidence upon which a reasonable person could rely.  The ALJ did not commit reversible error by doing so.

    Much the same analysis applies to the ALJ's findings in the other two domains at issue.  Again, Plaintiff emphasizes evidence which could support a contrary finding, such as the fact that the child's ADHD interfered to some extent with his ability to attend and complete tasks, and, as his teacher noted, he sometimes lost

focus and distracted other children. Again, however, the entirety of Ms. Bolin's review of the child's abilities in this domain showed that he had either a slight problem or no problem in many areas including paying attention, sustaining attention, refocusing when necessary, carrying out instructions (even multi-step instructions), completing assignments accurately, and working at a reasonable pace. Any obvious issues were not observed daily but rather weekly, and she explained that he only "sometimes" lost focus or distracted other children with his humming (and not through any disruptive behavior). Plaintiff also testified that the child had been able to do well in school without medication. The ALJ was permitted to, and did, rely on this information in making his finding (Tr. 258), and his decision was within the "zone of choice" permitted under the "substantial evidence" test.

In the last of the three domains at issue (interacting and relating with others), the ALJ noted that the child had some issues with making himself understood (Ms. Bolin said she could understand him one-half to two-thirds of the time) and that he sometimes got upset and cried in class when corrected. However, the ALJ pointed out that the child himself testified to having friends and that Plaintiff said he interacted well with adults, had friends at school, and got along reasonably well with his older sister. Again, Ms. Bolin rated his abilities in this area to be generally good and she said that there had been no need to try to correct his behavior with respect to others. His only obvious problem was taking turns in class discussions. The ALJ was also entitled to rely on these assessments, which are borne out by the record, in concluding (Tr. 259-60) that any limitations in this area were "less than marked." Overall, the ALJ fairly discussed the record and reached conclusions which a reasonable person could have reached, and that is sufficient to preclude reversal.

### B. The Credibility Determination

The other issue raised in Plaintiff's statement of errors relates to the ALJ's evaluation of the credibility of the testimony given at the hearing. She faults the ALJ for making a boilerplate statement to the effect that "the statements concerning the intensity, persistence and limiting effects of [the child's] symptoms are not entirely credible for the reasons explained below," Tr. 255, and then never explaining why the testimony was not fully credible or doing the analysis required by Social Security Ruling 96-7p or 20 C.F.R. §416.929(c)(3).

The short answer to this argument is that it does not appear the ALJ actually discounted any portion of the testimony given. Rather, he relied extensively on that testimony in his evaluation of the child's functioning, appearing to credit it completely. Further, he said, immediately after the sentence quoted above, that "[a]lthough candid and honest, the testimony provided by the claimant and his mother did not equate with a finding of disabling symptoms that cause significant limitations in his age appropriate functioning." (Tr. 255). Since the ALJ did not actually discredit any of the testimony of either Plaintiff or the child, but accepted it as accurate and relied on it in determining that the legal standards for disability had not been met, the ALJ had no obligation to review the factors set out either in SSR 96-7p or §416.929(c)(3). As stated in SSR 96-7p (now superseded), the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." It is clear to the Court that the ALJ gave the testimony significant weight; he just did not conclude that it supported a finding of disability. Again, there is no error here which would justify reversal and remand.

### VI. Recommended Decision

-11-

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant.

## VII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge